Slip Op. 19-140

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SHAKE AND SHINGLE ALLIANCE,** | |
| **Plaintiff,** | |
| **and** | |
| **GOVERNMENT OF CANADA,** | |
| **Plaintiff-Intervenor,** | |
| **v.** | **Before: Jennifer Choe-Groves, Judge** |
| **UNITED STATES,** | **Court No. 18-00228** |
| **Defendant,** | |
| **and** | |
| **COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,** | |
| **Defendant-Intervenor.** | |

### OPINION

[Remanding the U.S. Department of Commerce's final scope ruling as to cedar shakes and shingles.]

Dated: November 13, 2019

Joel R. Junker, Junker & Nakachi P.C., of Seattle, WA, for Plaintiff Shake and Shingle Alliance. Heather Jacobson also appeared on the brief.

Eric S. Parnes, Joanne E. Osendarp, Stephen R. Halpin III, and Daniel M. Witkowski, Hughes Hubbard & Reed LLP, of Washington, D.C., for Plaintiff-Intervenor Government of Canada.

Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With him on the brief

were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director. Of counsel on the brief was <u>Mercedes Morno</u>, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

<u>David A. Yocis</u>, <u>Lisa W. Wang</u>, <u>Whitney M. Rolig</u>, and <u>Zachary J. Walker</u>, Picard, Kentz & Rowe LLP, of Washington, D.C., for Defendant-Intervenor Committee Overseeing Action for Lumber International Trade Investigations or Negotiations.

      Choe-Groves, Judge:  Plaintiff Shake and Shingle Alliance ("Alliance" or "Plaintiff"), an entity comprised of Canadian producers and exporters of certain cedar shakes and shingles ("CSS"), brings this action challenging the U.S. Department of Commerce's ("Commerce") final scope ruling on certain softwood lumber products from Canada.  Summons, Nov. 8, 2018, ECF No. 1; Compl. ¶¶ 1–3, Nov. 8, 2018, ECF No. 2.  Commerce determined that Alliance's CSS are within the scope of the antidumping and countervailing duty orders on certain softwood lumber products from Canada.  <u>See</u> Final Scope Ruling – Cedar Shakes and Shingles, A-122-857/C-122-858, PD 18 (Sept. 10, 2018) ("Final Scope Ruling"); <u>see</u> Certain Softwood Lumber Products From Canada, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018) (antidumping duty order and partial amended final determination) and <u>Certain Softwood Lumber Products From Canada</u>, 83 Fed. Reg. 347 (Dep't Commerce Jan. 3, 2018) (amended final affirmative countervailing duty determination and countervailing duty order) (collectively, "Orders").

      Before the court are Plaintiff's and Plaintiff-Intervenor's motions for judgment on the agency record.  Pl.'s Mot. for J. on the Agency R., Apr. 23, 2019, ECF No. 35; Pl.-Intervenor's Rule 56.2 Mot. for J. on the Agency R., Apr. 24, 2019, ECF No. 36.  For the reasons discussed below, the court concludes that Commerce's scope determination is not in accordance with the

law.  The court remands Commerce's scope ruling for redetermination consistent with this

opinion.

## PROCEDURAL HISTORY

Defendant-Intervenor Committee Overseeing Action for Lumber International Trade

Investigations or Negotiations ("Coalition," "Petitioner," or "Defendant-Intervenor") sought the

imposition of antidumping and countervailing duties on imports of certain softwood lumber

products from Canada on November 25, 2016.  Petitions for the Imposition of Antidumping and

Countervailing Duties on Imports of Certain Softwood Lumber Products from Canada, bar code

3525127-10 (Nov. 25, 2016) ("Coalition Petition").  Commerce issued antidumping and

countervailing duty orders on certain softwood lumber products from Canada on January 3,

2018.  See Orders.  The Orders contained identical scope language, which provided the

following description of the subject merchandise:

> The merchandise covered by the order is softwood lumber, siding, flooring, and
> certain other coniferous wood (softwood lumber products).  The scope includes:
>
> - Coniferous wood, sawn, or chipped lengthwise, sliced or peeled, whether
>   or not planed, whether or not sanded, or whether or not finger-jointed, of
>   an actual thickness exceeding six millimeters.
>
> - Coniferous wood siding, flooring, and other coniferous wood (other than
>   moldings and dowel rods), including strips and friezes for parquet
>   flooring, that is continuously shaped (including, but not limited to,
>   tongued, grooved, rebated, chamfered, V-jointed, beaded, molded,
>   rounded) along any of its edges, ends, or faces, whether or not planed,
>   whether or not sanded, or whether or not end-jointed.
>
> - Coniferous drilled and notched lumber and angle cut lumber.
>
> - Coniferous lumber stacked on ends and fastened together with nails,
>   whether or not with plywood sheathing.

- Components or parts of semi-finished or unassembled finished products made from subject merchandise that would otherwise meet the definition of the scope above.

Finished products are not covered by the scope of this order. For the purposes of this scope, finished products contain, or are comprised of, subject merchandise and have undergone sufficient processing such that they can no longer be considered intermediate products, and such products can be readily differentiated from merchandise subject to this order at the time of importation. Such differentiation may, for example, be shown through marks of special adaptation as a particular product. The following products are illustrative of the type of merchandise that is considered "finished," for the purpose of this scope: I-joists; assembled pallets; cutting boards; assembled picture frames; garage doors.

Orders, 83 Fed. Reg. at 351; 83 Fed. Reg. at 349. Commerce issued a Preliminary Scope Memorandum on June 23, 2017. Certain Softwood Lumber Products from Canada: Preliminary Scope Decision, PD 21 (Dep't Commerce June 23, 2017). Approximately two months after Commerce issued its Final Scope Ruling, U.S. Customs and Border Protection ("CBP") issued a notice that "coniferous shingles and sawn shakes from Canada fall within the scope of [the Orders]." CBP, CSMS #18-000223, Coniferous Shingles and Sawn Shakes AD/CVD (Mar. 15, 2018), available at

https://csms.cbp.gov/viewmssg.asp?Recid=23419&page=7&srch_argv=&srchtype=&btype

=&sortby=&sby= (last visited Nov. 6, 2019).

Plaintiff filed a scope ruling request seeking a determination that CSS were beyond the scope of the Orders. Certain Softwood Lumber from Canada (A-122-857/C-122-858) Request for Scope Determination for Certain Cedar Shakes and Shingles, PD 1 (June 12, 2018). Plaintiff asserted that CSS were neither softwood lumber nor softwood lumber products, "were not the subject of or included within the underlying investigations[,]" and were "not described by the scope language of the Orders." Id. at 2. Plaintiff argued that CSS are a separate and distinct

product and industry.  Id. at 25.  Alternatively, Plaintiff averred that even if CSS were within the

scope of the investigations, CSS met the "finished goods" exclusion from the Orders.  Id. at 34–

38.

      Coalition opposed Alliance's Scope Request on June 28, 2018.  Certain Softwood

Lumber Products from Canada: Comments on Request for a Scope Ruling by the Shake and

Shingle Alliance, PD 8 (June 28, 2018).  Coalition argued that the scope of the Orders expressly

covered CSS, that CSS do not constitute "finished products" and that excluding CSS would

present circumvention and administrability concerns.  See id. at 3–14.

      Alliance and the Government of Canada filed rebuttal comments.  Certain Softwood

Lumber from Canada (A-122-857/C-122-858) Response to Petitioner's Comments on the

Alliance's Scope Ruling Request, PD 12 (July 17, 2018) ("Alliance Rebuttal Comments");

Certain Softwood Lumber Products from Canada (A-122-857/C-122-858): Government of

Canada's Response to Petitioner's Comments on Request for a Scope Ruling by the Alliance, PD

17 (Aug. 3, 2018) ("Pl.-Intervenor's Rebuttal Comments").  The Government of Canada argued

that Commerce had found CSS distinct from softwood lumber in five previous investigations and

two international agreements, that when faced with a situation similar to past investigations,

Commerce should either adhere to its decades-long practice of treating CSS distinctly from

softwood lumber or explain its reason for deviating from its practice, and that if CSS were

determined to be within the scope, then CSS met the "finished products" exception.

Pl.-Intervenor's Rebuttal Comments 3–7.  The Government of Canada attached an annex to its

rebuttal comments comparing relevant scope language from the current Orders to prior orders on

softwood lumber issued by Commerce and two international agreements between the United

States and Canada addressing the softwood lumber trade, which the court reproduces below:

## Annex I

### Scope Language Comparison[37]

**Scope Language From Current Orders Relied upon by CBP**

Coniferous wood, sawn, or chipped lengthwise, sliced or peeled, whether or not planed, whether or not sanded, or whether or not finger-jointed, of an actual thickness exceeding six millimeters

**Scope Language in Current Orders v. Lumber III**

Coniferous wood, sawn~~,~~ or chipped lengthwise, sliced or peeled, whether or not planed, ~~whether or not~~ sanded, or ~~whether or not~~ finger-jointed, of an ~~actual~~ thickness exceeding six millimeters

**Scope Language in Orders v. SLA 1996**

Coniferous wood, sawn, or chipped lengthwise, sliced or peeled, whether or not planed, ~~whether or not~~ sanded, or ~~whether or not~~ finger-jointed, of an ~~actual~~ thickness exceeding six millimeters

**Scope Language in Current Orders v. Lumber IV**

Coniferous wood, sawn, or chipped lengthwise, sliced or peeled, whether or not planed, ~~whether or not~~ sanded, or ~~whether or not~~ finger-jointed, of an ~~actual~~ thickness exceeding six millimeters

**Scope Language in Current Orders v. SLA 2006**

Coniferous wood, sawn, or chipped lengthwise, sliced or peeled, whether or not planed, ~~whether or not~~ sanded, or ~~whether or not~~ finger-jointed, of an ~~actual~~ thickness exceeding six millimeters

**Scope Language in Current Orders v. HTSUS 4407.10.01**

Coniferous wood, sawn, or chipped lengthwise, sliced or peeled, whether or not planed, ~~whether or not~~ sanded, or ~~whether or not finger-~~jointed, of an ~~actual~~ thickness exceeding six millimeters

---

[37] Struck language demonstrates the edits necessary to form the prior orders' scope language.

Commerce issued its Final Scope Ruling on September 10, 2018.  Final Scope Ruling 20.

Commerce determined that the 19 C.F.R. § 351.225(k)(1) factors are dispositive as to whether

CSS are merchandise subject to the Orders, and Commerce did not consider the additional

factors specified in 19 C.F.R. § 351.225(k)(2).  Id. at 5, 12.

Plaintiff commenced this action on November 8, 2018.  Summons, Nov. 8, 2018, ECF

No. 1; Compl. ¶¶ 1–3, Nov. 8, 2018, ECF No. 2.  Plaintiff and Plaintiff-Intervenor filed motions

for judgment on the agency record.  Pl.'s Mot. for J. on the Agency R. and Mem. in Supp. of

Pl.'s Rule 56.2 Mot. for J. on Agency R., Apr. 23, 2019, ECF No. 35 ("Pl.'s Br."); Pl.-

Intervenor's Rule 56.2 Mot. for J. on the Agency R., Apr. 24, 2019, ECF No. 36; Pl.-Intervenor's

Mem. in Supp. of Rule 56.2 Mot. For J. on the Agency R., Apr. 24, 2019, ECF No. 36-1 ("Pl.-

Intervenor's Br.").  Defendant and Defendant-Intervenor opposed.  Def.'s Resp. Pls.' Rule 56.2

Mots. J. Agency R., May 24, 2019, ECF No. 42 ("Def.'s Opp'n"); Def.-Intervenor's Resp. Opp'n

Pl.'s and Pl.-Intervenor's Mot. J. Agency R., May 24, 2019, ECF No. 41 ("Def.-Intervenor's

Opp'n").  Plaintiff and Plaintiff-Intervenor replied.  Pl.'s Reply to Defs.' Resp. Pl.'s Mot. J.

Agency R., June 7, 2019, ECF No. 43; Pl.-Intervenor's Reply Mem. Supp. Rule 56.2 Mot. J.

Agency R., June 7, 2019, ECF No. 44 ("Pl.-Intervenor's Reply").  The court held oral argument.

Oral Argument, Aug. 16, 2019, ECF No. 49.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction to review Commerce's scope determination under 28 U.S.C.

§ 1581(c) (2012) and Section 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19

U.S.C. § 1516a(2)(B)(vi) (2012).  The court will uphold Commerce's final scope determination

unless it is unsupported by substantial evidence on the record, or otherwise not in accordance

with the law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.  Legal Framework

When an importer requests a scope ruling to determine if a product is included within the

scope of an antidumping or countervailing duty order, Commerce must first examine the

language of the order itself.  Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir.

2002).  If the scope language is ambiguous, Commerce must then consider the descriptions of the

merchandise contained in the petition, how the scope was defined in the initial investigation, and

"the determinations [issued by] [Commerce] (including prior scope determinations) and the

Commission."  19 C.F.R. § 351.225(k)(1).  These factors are known as the "(k)(1)" sources.  Id.

If the (k)(1) sources are dispositive, Commerce will issue a final scope ruling.  See Tak Fat

Trading Co. v. United States, 396 F.3d 1378, 1382 (Fed. Cir. 2005).  If the (k)(1) sources are not

dispositive, Commerce must address additional criteria known as the "(k)(2) factors," which are:

the product's physical characteristics, ultimate purchasers' expectations, the ultimate use of the

product, trade channels in which the product is sold, and the manner in which the product is

advertised and displayed.  19 C.F.R. § 351.225(k)(2).

Scope orders may be interpreted as including subject merchandise only if the orders'

language specifically or may be reasonably interpreted to include the subject merchandise.

Duferco Steel, Inc., 296 F.3d at 1089.  A final scope order may be clarified but cannot be

modified and interpreted in a way contrary to its terms.  Id. at 1097 (citations omitted).

Antidumping and countervailing duty orders should not be interpreted in isolation bereft of any

consideration of how an order's scope language is used in the relevant industry.  See

ArcelorMittal Stainless Belgium N.V. v. United States, 694 F.3d 82, 88 (Fed. Cir. 2012).

"Because the primary purpose of an . . . order is to place foreign exporters on notice of what

merchandise is subject to duties, the terms of an order should be consistent, to the extent

possible, with trade usage."  Id.

If Commerce fails to consider or discuss record evidence which, on its face, provides

significant support for an alternative conclusion, then Commerce's determination is unsupported

by substantial evidence.  Ceramark Tech., Inc. v. United States, 38 CIT __, __, 11 F. Supp. 3d

1317, 1323 (2014) (citing Allegheny Ludlum Corp. v. United States, 24 CIT 452, 479, 112 F.

Supp. 2d 1141, 1165 (2000)).  Although Commerce's explanations do not have to be perfect, the

path of Commerce's decision must be reasonably discernable to a reviewing court.  NMB

Singapore Ltd. v. United States, 557 F.3d 1316, 1319–20 (Fed. Cir. 2009) (citing Motor Vehicle

Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citation omitted)).

## II.  19 C.F.R. § 351.225(k)(1) Factors

Commerce found the 19 C.F.R. § 351.225(k)(1) factors dispositive as to whether the

scope of the Orders covers CSS.  Final Scope Ruling 12.  The parties dispute how adding the

word "actual" in the first category and the phrase "angle cut lumber" in the third category of the

scope language covers CSS.  See Pl.'s Br. 14–15, Pl.-Intervenor's Br. 21–28; Def.'s Br. 12–16,

Def.-Intervenor's Br. 14–22.  Plaintiff and Plaintiff-Intervenor argue, inter alia, that previous

investigations involving lumber from Canada with similar scope language are relevant to the

court's analysis because Commerce concluded that CSS were excluded from the scope in prior

investigations.  Pl.'s Br. 22–23, 32–35; Pl.-Intervenor's Br. 9–18, 21.  The Government of

Canada argues that the International Trade Commission's final injury determination shows no

intent to include CSS because the Commission's domestic like-product analysis does not address

or include CSS and none of the import data the Commission relied on in making its final

determination included 4418.50, Harmonized Tariff Schedule of the United States ("HTSUS")—

the applicable CSS tariff subheading covering "shingles and shakes."  Pl.-Intervenor's Br. 28–

30; see Softwood Lumber Products From Canada, USITC Pub. 4749, Inv. Nos. 701-TA-566 and

731-TA-1342 (Final) (Dec. 2017) (describing the relevant merchandise as "softwood lumber

products from Canada, provided for in subheadings 4407.10.01, 4409.10.05, 4409.10.10,

4409.10.20, 4409.10.90, 4418.90.10 of the [HTSUS]").  The Government of Canada argues that

if Petitioner, Commerce, or the Commission intended to depart from decades of prior

proceedings and international agreements to now include CSS as subject merchandise, then it

belies belief that Petitioner, Commerce, or the Commission failed to include the relevant HTSUS

subheading covering "shingles and shakes."  Pl.-Intervenor's Br. 30.

Defendant responds that the scope of prior lumber investigations does not govern

Commerce's interpretation of the Orders because Commerce's analysis is exclusively governed

by its regulations set out in 19 C.F.R. § 351.225(k).[1]  Def.'s Opp'n 18, 26–27.  Although

Defendant and Coalition recognize that Commerce must consider the Commission's

determinations in its (k)(1) analysis, Def.'s Opp'n 27; Def.-Intervenor's Br. 14, 25, neither

Defendant nor Coalition address the Government of Canada's arguments about how the

Commission's final injury determination in Lumber V shows a lack of intent to include CSS.

---

[1] Defendant also asserts exhaustion of administrative remedies and circumvention arguments.
Def.'s Opp'n 16–18, 20.

## A.  Description of the Merchandise Contained in the Petition

The Government of Canada argues that Petitioner listed more than 50 HTSUS

subheadings under which subject merchandise may be entered into the United States, but

Petitioner omitted subheading 4418.50, HTSUS, which covers:

> Builders' joinery and carpentry of wood, including cellular wood panels and
> assembled flooring panels; shingles and shakes:
>
>     Shingles and shakes

4418.50, HTSUS (2018).[2]  Pl-Intervenor's Br. 25 n.21, 29–30.

---

[2] Defendant-Intervenor proposed the following scope underlying the investigation in this case:

> The merchandise covered by these petitions is softwood lumber, siding, flooring and
> certain other coniferous wood ("softwood lumber products").  The scope includes:
>
> - Coniferous wood, sawn, or chipped lengthwise, sliced or peeled, whether
>   or not planed, whether or not sanded, or whether or not finger-jointed, of
>   an actual thickness exceeding six millimeters.
>
> - Coniferous wood siding, flooring, and other coniferous wood (other than
>   moldings and dowel rods), including strips and friezes for parquet
>   flooring, that is continuously shaped (including, but not limited to,
>   tongued, grooved, rebated, chamfered, V-jointed, beaded, molded,
>   rounded) along any of its edges, ends, or faces, whether or not planed,
>   whether or not sanded, or whether or not end-jointed.
>
> - Coniferous drilled and notched lumber and angle cut lumber.
>
> - Coniferous lumber stacked on edge and fastened together with nails,
>   whether or not with plywood sheathing.
>
> - Components or parts of semi-finished or unassembled finished products
>   made from subject merchandise that would otherwise meet the definition
>   of the scope above are within the scope of these investigations.

Softwood lumber product imports are generally entered under Chapter 44 of the
Harmonized Tariff Schedule of the United States ("HTSUS").  This chapter of the
HTSUS covers "Wood and articles of wood."  Softwood lumber products that are

### B.  The Initial Investigation

Commerce's Final Scope Ruling addressed, *inter alia*, prior scope rulings from the

present investigation that Commerce deemed relevant.  Final Scope Ruling 5, 13.  Commerce

noted that the "sawn lengthwise" language found in the first category of merchandise covers CSS

because the CSS production process involves a "diagonal cut, which is . . . partially lengthwise."

Id. at 13.  Commerce found that similar to its treatment of wood shims in the investigations, CSS

was covered under additional scope language for merchandise having "an actual thickness

exceeding six millimeters."  Id.  Commerce concluded that the "actual thickness" language

---

subject to these petitions are currently classifiable under the following ten-digit
HTSUS subheadings in Chapter 44:

4407.10.01.01; 4407.10.01.02; 4407.10.01.15; 4407.10.01.16; 4407.10.01.17;
4407.10.01.18; 4407.10.01.19; 4407.10.01.20; 4407.10.01.42; 4407.10.01.43;
4407.10.01.44; 4407.10.01.45; 4407.10.01.46; 4407.10.01.47; 4407.10.01.48;
4407.10.01.49; 4407.10.01.52; 4407.10.01.53; 4407.10.01.54; 4407.10.01.55;
4407.10.01.56; 4407.10.01.57; 4407.10. 01.58; 4407.10.01.59; 4407.10.01.64;
4407.10.01.65; 4407.10.01.66; 4407.10.01.67; 4407.10.01.68; 4407.10.01.69;
4407.10.01.74; 4407.10.01.75; 4407.10.01.76; 4407.10.01.77; 4407.10. 01.82;
4407.10.01.83; 4407.10.01.92; 4407.10.01.93; 4409.10.05.00; 4409.10.10.20;
4409.10.10.40; 4409.10.10.60; 4409.10.10.80; 4409.10.20.00; 4409.10.90.20;
4409.10.90.40; and 4418.90.25.00.

Subject merchandise may also be classified as stringers, square cut box-spring-
frame components, fence pickets, truss components, pallet components, and door
and window frame parts under the following ten-digit HTSUS subheadings in
Chapter 44: 4415.20.40.00; 4415.20.80.00; 4418.90.46.05; 4418.90.46.20;
4418.90.46.40; 4418.90.46.95; 4421.90.70.40; 4421.90.94.00; and 4421.90.97.80.

Although these HTSUS subheadings are provided for convenience and customs
purposes, the written description of the scope of the investigation is dispositive.

Petitions for the Imposition of Antidumping and Countervailing Duties of Imports on Certain
Softwood Lumber Products from Canada at 26–27, PD 24 (Nov. 25. 2016).

encompasses CSS because the subject merchandise exceeds six millimeters at some point. Id. at

14.  Commerce found that CSS falls under the scope language for "angle cut lumber" because

CSS is lumber and the CSS production process involves many cuts, including the distinctive

diagonal cut that occurs at an angle. Id. at 14–15.  Commerce found that CSS do not meet the

"finished products" exclusion because CSS cannot be readily differentiated from the subject

merchandise. Id. at 16.

### C.  Determinations of Commerce

#### i.  Prior Proceedings

Under 19 C.F.R. § 351.225(k)(1), Commerce must consider determinations made in prior

proceedings.  Commerce has conducted investigations into softwood lumber products from

Canada since at least 1983, through five investigations (Lumber I through Lumber V) and two

international agreements (SLA 1996 and SLA 2006), as discussed below.  The Government of

Canada contends that the history of prior lumber investigations is replete with consistent usage of

similar scope language showing that CSS is distinct from Canadian softwood lumber and thus is

relevant in this action.  Pl-Intervenor's Br. 7.  The court briefly recounts the points of contention

arising in the prior investigations.

In Lumber I, a coalition of U.S. lumber producers filed a petition with Commerce seeking

to impose countervailing duties on softwood lumber from Canada. See Initiation of

Countervailing Duty Investigations; Certain Softwood Lumber Products From Canada, 47 Fed.

Reg. 49,878 (Nov. 3, 1982).  In dismissing the petition, Commerce recognized that "softwood

shakes and shingles" are distinct from "softwood lumber." See Final Negative Countervailing

Duty Determinations; Certain Softwood Products From Canada, 48 Fed. Reg. 24,159, 24,174–75

(Dep't Commerce May 31, 1983).  Commerce found that "softwood lumber" covered products

of the Tariff Schedules of the United States (1982) ("TSUS") in items 202.03–202.30 (rough,

dressed, or worked softwood lumber), but "[f]or purposes of this investigation, the term

'softwood shakes and shingles' refers only to those products designated in TSUS as item

200.85."  Id.  The Commission found that lumber, shakes and shingles, and fencing constitute

three distinct industries and that under the Canadian and United States industrial classification

systems, lumber, shakes and shingles, veneer and plywood, furniture, sashes and doors, and pulp

and paper are identified as separate industries and are listed under several major industry groups.

Id. at 24,182.  Commerce concluded that any subsidies received for softwood lumber, shakes and

shingles, and fencing were *de minimis* and issued negative determinations as to each product.  Id.

at 24,195.

        In Lumber II, Commerce continued treating CSS as distinct from softwood lumber in

Lumber I.  The scope of the investigation covered:

> softwood lumber, rough, dressed, or worked (including softwood flooring classified
> as lumber), provided for in TSUS items 202.03 through 202.30, inclusive; softwood
> siding, not drilled or treated, provided for in items 202.47 through 202.50,
> inclusive; other softwood siding, provided for in items 202.52 and 202.54; and
> softwood flooring provided for in item 202.60 of the TSUS.

Preliminary Affirmative Countervailing Duty Determination: Certain Softwood Lumber Products

from Canada, 51 Fed. Reg. 37,453, 37,454 (Dep't Commerce Oct. 22, 1986).  At the time, CSS

was classified under TSUS 200.85 ("Wood shingles and shakes").  See Int'l Trade Comm'n,

Tariff Schedules of the United States Annotated (1987), Schedule 2: Wood & Paper; Printed

Matter, available at https://www.usitc.gov/publications/docs/tata/hts/bychapter/tsussched2.pdf

(last visited Nov. 6, 2019).  Commerce did not issue a final determination in Lumber II because

the United States and Canada reached a Memorandum of Understanding from which Canada

later withdrew in 1991, prompting Commerce to self-initiate an investigation.  See Self-Initiation

of Countervailing Duty Investigation: Certain Softwood Lumber Products From Canada, 56 Fed.

Reg. 56,055, 56,055 (Dep't Commerce Oct. 31, 1991).

     The scope in Lumber III covered certain softwood lumber products but contained no

indication as to covering CSS.  Final Affirmative Countervailing Duty Determination: Certain

Softwood Lumber Products from Canada, 57 Fed. Reg. 22,570, 22,570 (Dep't Commerce May

28, 1992).  Commerce did reference CSS as part of a list of non-lumber products that are made

using timber, such as "lumber, plywood, veneer, poles and posts, and shakes and shingles." Id. at

22,583.

     After Commerce's Lumber III investigation, the United States and Canada entered into

the 1996 Softwood Lumber Agreement ("SLA 1996").  Softwood Lumber Agreement, U.S.-

Can., May 29, 1996, 35 I.L.M. 1195, available at

https://www.jstor.org/stable/20698601?seq=1#metadata_info_tab_contents (last visited Nov. 6,

2019); see Canadian Exports of Softwood Lumber, 61 Fed. Reg. 28,626 (U.S. Trade Rep. June 5,

1996) (Notice of Agreement; Monitoring and Enforcement Pursuant to Sections 301 and 306).

The SLA 1996's definition of softwood lumber does not mention cedar shakes and shingles or

the tariff subheading 4418.50.00.

     In Lumber IV, Commerce issued orders after its antidumping and countervailing duty

investigations on softwood lumber from Canada, but Commerce did not include CSS or its tariff

subheading within the scope of its Lumber IV orders.  Notice of Amended Final Affirmative

Countervailing Duty Determination and Notice of Countervailing Duty Order: Certain Softwood

Lumber Products From Canada, 67 Fed. Reg. 36,070, 36,070 (Dep't Commerce May 22, 2002).

In its issues and decision memorandum, Commerce explained that CSS are distinct from

products that "resulted from the lumber production process" which justified excluding CSS from

the scope of the <u>Lumber IV</u> orders.  <u>See</u> Issues and Decision Memorandum: Final Results of the

Countervailing Duty Investigation of Certain Softwood Lumber Products from Canada, PD 15

(Dep't Commerce Mar. 21, 2002).  In its final determination in the <u>Lumber IV</u> antidumping duty

investigation, Commerce expressly ruled that the scope language includes angle cut lumber but

does not include CSS.  <u>See</u> Issues and Decision Memorandum for the Antidumping Duty

Investigation of Certain Softwood Lumber Products from Canada, PD 16 (Dep't Commerce Mar.

21, 2002) ("[W]e have determined that, had Customs considered that the specialty cuts

constituted a shake or shingle, these products[, specialty cut lumber,] would have been classified

under HTSUS 4418.50.00, articles of shingles and shakes, which are not covered by the scope of

these investigations.").

        The <u>Lumber IV</u> proceedings terminated when the United States and Canada entered into

the 2006 Softwood Lumber Agreement ("SLA 2006").  Softwood Lumber Agreement, U.S.-

Can., Sept. 12, 2006, Temp. State Dep't No. 07-222, <u>available at</u>

https://ustr.gov/sites/default/files/uploads/factsheets/Trade%20Topics/enforcement/softwood%2

0lumber/2006%20U.S.-Canada%20Softwood%20Lumber%20Agreement.pdf (last visited Nov.

6, 2019).  As in <u>Lumber IV</u>, the SLA 2006 language contains no mention of CSS or its relevant

tariff subheading: HTSUS 4418.50.

### ii.  Application of Prior Proceedings

Plaintiff argues that Commerce's decision to disregard its prior softwood lumber

determinations, in which Commerce found CSS not to be within the scope of the corresponding

investigation and that CSS was a separate industry from softwood lumber, was not in accordance

with the law.  See Pl.'s Br. 31–32.  The Government of Canada claims that the scope language in

the Orders is substantively the same as the scope language used in prior lumber proceedings.

Pl.-Intervenor's Br. 7–8, 21–28.  The Government of Canada contends that the history of

softwood lumber investigations, which spans nearly 40 years and includes two agreements

between the United States and Canada, supports the exclusion of CSS from the scope of the

Orders.  Pl.-Intervenor's Br. 28–29.  The Government of Canada finds fault in Commerce's

reliance on the USDA Wood Handbook to support its contention that CSS is "lumber" since the

Wood Handbook notes that the lumber industry "has also produced" an array of products,

including "shingles and shakes."  Pl.-Intervenor's Reply 8.  The Government of Canada contends

that just because lumber producers manufacture other products, such as shingles and shakes, that

does not make those other products lumber.  Id.  The Government of Canada points to

Commerce having recognized that lumber-producing sawmills also produce such products as

wood chips, saw dust, and hog fuel—products that fall outside the scope of the Orders.  Id.

(citing Issues and Decision Memorandum for the Final Affirmative Determination of Sales at

Less Than Fair Value and Affirmative Final Determination of Critical Circumstances of Certain

Softwood Lumber Products from Canada, bar code 3636100-01 (Dep't Commerce Nov. 1,

2017)).

As to the history of prior softwood lumber proceedings and prior scope rulings, Commerce concluded that it was "not faced with an identical scenario or a 'similar situation' to the earlier proceedings referenced by [Plaintiff] and [Plaintiff-Intervenor]" because the Orders' scope language was a "clear departure[] from previous scope language." Final Scope Ruling 19. Commerce supported this conclusion by mentioning the scope provisions pertaining to angle cut, semi-finished, and finished products that are made from softwood lumber. Id.

When determining the scope of an order, Commerce must consider the (k)(1) sources, including "the determinations of [Commerce] (including prior scope determinations) and the [International Trade] Commission." 19 C.F.R. § 351.225(k)(1). The court notes that Commerce's Final Scope Ruling contains no substantive discussion of prior lumber proceedings or prior scope determinations in which Commerce found CSS to be distinct from softwood lumber since at least 1983. See Final Scope Ruling 19. CBP relied on language treating CSS within the scope of the Orders as being similar to the language used in Lumber III, SLA 1996, Lumber IV, and SLA 2006, which neither CBP nor Commerce treated as covering CSS. Given that past proceedings involved the same subject (softwood lumber) and country (Canada) and included scope language substantively identical to the current scope language, the court concludes that Commerce cannot claim to have sufficiently addressed the prior proceedings by its passing reference to the history of contrary prior softwood lumber investigations in its Final Scope Ruling.

Accordingly, the court determines that Commerce's Final Scope Ruling does not adequately address how Commerce concluded that the prior lumber proceedings or prior scope determinations compared with or were distinguishable from the current scope determination in

accordance with 19 C.F.R. § 351.225(k)(1).  The court concludes that Commerce's Final Scope

Ruling is not in accordance with the law.

### III.  19 C.F.R. § 351.225(k)(2) Factors

Plaintiff argues that Commerce's decision to not consider the enumerated factors

provided by 19 C.F.R. § 351.225(k)(2) was not in accordance with law.  Pl.'s Br. 40–41.

Commerce did not address the 19 C.F.R. § 351.225(k)(2) factors because Commerce found the

19 C.F.R. § 351.225(k)(1) factors dispositive.  Final Scope Ruling 5, 12.  Because the court finds

that Commerce's Final Scope Ruling is not in accordance with the law, the court does not reach

this issue.

**CONCLUSION**

For the foregoing reasons, the court concludes that Commerce's Final Scope Ruling is

not in accordance with the law.

Upon consideration of all papers and proceedings in this action, it is hereby

**ORDERED** that Commerce's Final Scope Ruling is remanded for further consideration

of the record as it pertains to the determination of the subject merchandise; and it is further

**ORDERED** that Commerce's Final Scope Ruling is remanded for further consideration

of the evidence in the investigation as it pertains to the determination of whether CSS are within

the scope; and it is further

**ORDERED** that Commerce's Final Scope Ruling is remanded for further consideration

of prior determinations, including but not limited to scope rulings, in accordance with 19 C.F.R.

§ 351.225(k)(1); and it is further

Court No. 18-00228                                                          Page 20

     **ORDERED** that Commerce shall file its remand determination on or before

January 13, 2020; and it is further

     **ORDERED** that Commerce shall file the administrative record on or before

January 27, 2020; and it is further

     **ORDERED** that Parties' comments in opposition to the remand determination shall be

filed on or before February 26, 2020; and it is further

     **ORDERED** that Parties' comments in support of the remand determination shall be filed

on or before March 27, 2020; and it is further

     **ORDERED** that the Joint Appendix shall be filed on or before April 10, 2020.


                                         /s/Jennifer Choe-Groves
                                         Jennifer Choe-Groves, Judge

Dated: November 13, 2019
       New York, New York