Slip Op. 20-52

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHAKE AND SHINGLE ALLIANCE,<br><br>    Plaintiff,<br><br>and<br><br>GOVERNMENT OF CANADA,<br><br>    Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,<br><br>    Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 18-00228 |

### OPINION

[Sustaining the U.S. Department of Commerce's remand redetermination as to the scope ruling on certain cedar shakes and shingles.]

    Dated: April 20, 2020

Heather Jacobson, Junker & Nakachi P.C., of Seattle, WA, for Plaintiff Shake and Shingle Alliance.

Eric S. Parnes, Joanne E. Osendarp, Daniel M. Witkowski, and Stephen R. Halpin III, Hughes Hubbard & Reed LLP, of Washington, D.C., for Plaintiff-Intervenor Government of Canada.

Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With him on the brief

were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director.

<u>David A. Yocis</u>, <u>Lisa W. Wang</u>, <u>Whitney M. Rolig</u>, and <u>Zachary J. Walker</u>, Picard, Kentz & Rowe LLP, of Washington, D.C., for Defendant-Intervenor Committee Overseeing Action for Lumber International Trade Investigations or Negotiations.

Choe-Groves, Judge:  The court revisits the decades-long dispute over Canadian softwood lumber in this case.  Specifically, the court reviews here whether the scope of the U.S. Department of Commerce's ("Commerce") antidumping and countervailing duty orders on certain softwood lumber products from Canada cover certain cedar shakes and shingles ("CSS"). <u>Certain Softwood Lumber Products From Canada</u>, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018) (antidumping duty order and partial amended final determination) ("AD Order") and <u>Certain Softwood Lumber Products From Canada</u>, 83 Fed. Reg. 347 (Dep't Commerce Jan. 3, 2018) (amended final affirmative countervailing duty determination and countervailing duty order) ("CVD Order") (collectively, "Orders").

Before the court are the Final Results of Redetermination Pursuant to Court Remand Order, ECF No. 58 ("<u>Remand Results</u>"), filed by Commerce per the court's opinion, <u>Shake and Shingle Alliance v. United States</u>, 43 CIT __, 415 F. Supp. 3d 1249, 1260 (2019) ("<u>Shake and Shingle Alliance I</u>").  Commerce reversed its prior determination and found in the <u>Remand Results</u> that CSS were outside the scope of the order, and the court sustains Commerce's <u>Remand Results</u>.

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in <u>Shake and Shingle Alliance I</u> and recites the facts pertinent to the court's review of the <u>Remand Results</u>.

Court No. 18-00228                                                                                             Page 3

      Commerce issued the Orders on January 3, 2018.  AD Order, 83 Fed. Reg at 350; CVD Order, 83 Fed. Reg. at 347.  The Orders contained identical scope language describing the subject merchandise:

> The merchandise covered by this order is softwood lumber, siding, flooring and certain other coniferous wood (softwood lumber products).  The scope includes:
>
> • Coniferous wood, sawn, or chipped lengthwise, sliced or peeled, whether or not planed, whether or not sanded, or whether or not finger-jointed, of an actual thickness exceeding six millimeters.
>
> • Coniferous wood siding, flooring, and other coniferous wood (other than moldings and dowel rods), including strips and friezes for parquet flooring, that is continuously shaped (including, but not limited to, tongued, grooved, rebated, chamfered, V-jointed, beaded, molded, rounded) along any of its edges, ends, or faces, whether or not planed, whether or not sanded, or whether or not end-jointed.
>
> • Coniferous drilled and notched lumber and angle cut lumber.
>
> • Coniferous lumber stacked on edge and fastened together with nails, whether or not with plywood sheathing.
>
> • Components or parts of semi-finished or unassembled finished products made from subject merchandise that would otherwise meet the definition of the scope above.
>
> Finished products are not covered by the scope of [the Orders].

AD Order, 83 Fed. Reg. at 351; CVD Order, 83 Fed. Reg. at 349.  In its final scope ruling, Commerce determined that the scope of the Orders covers CSS.  <u>Shake and Shingle Alliance I</u>, 415 F. Supp. 3d at 1255 (citing Final Scope Ruling – Cedar Shakes and Shingles, A-122-857/C-122-858, at 1, PD 18 (Sept. 10, 2018) ("Final Scope Ruling")).  Plaintiff Shake and Shingle Alliance ("Plaintiff") and Plaintiff-Intervenor Government of Canada ("Plaintiff-Intervenor")

challenged the Final Scope Ruling to this court. Pl. Mot. for J. on Agency R., ECF No. 35; Pl-Int. Rule 56.2 Mot. for J. on Agency R., ECF No. 36.

This Court held that Commerce's finding that the scope of the Orders covers CSS was not in accordance with the law and remanded the case to Commerce. Shake and Shingle Alliance I, 415 F. Supp. 3d at 1260. The court reasoned that Commerce's Final Scope Ruling was contrary to the controlling regulation, 19 C.F.R. § 351.225(k)(1), because Commerce's analysis of the (k)(1) criteria lacked consideration of prior softwood lumber proceedings or prior scope determinations in which Commerce found CSS distinct from softwood lumber since at least 1983.[1] Id. at 1259 (noting the extensive history of softwood lumber proceedings spans five investigations and two international agreements and "that past proceedings involved the same subject [merchandise] (softwood lumber) and country (Canada) and included scope language substantively identical to the current scope language[]"). The court concluded that Commerce's "passing reference to the history of contrary prior softwood lumber investigations in its Final Scope Ruling" was not in accordance with the methodology set forth in Commerce's own regulations. Id. at 1259–60.

Commerce issued the Remand Results, finding that CSS fall beyond the scope of the Orders, on February 13, 2020. Id. at 1. Defendant United States ("Defendant"), Plaintiff, and

---

[1] The framework for evaluating the scope of an order is set forth in Commerce's regulations. Under 19 C.F.R. § 351.225(k), Commerce must consider "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of [Commerce] (including prior scope determinations) and the [International Trade] Commission." Id. § 351.225(k)(1). If Commerce "can determine, based solely upon the application [for a scope ruling] and the descriptions of the merchandise referred to in [19 C.F.R. § 351.225(k)(1)], whether a product is included within the scope of an order . . . , [then Commerce] will issue a final ruling . . . ." Id. § 351.225(d).

Plaintiff-Intervenor urge the court to sustain the Remand Results because Commerce's analysis in the Remand Results complies with the court's remand order. See Def. Cmts. in Supp. of the Remand Results 1–2, ECF No. 60 ("Def. Cmts."); Pl. Cmts. in Supp. of Final Remand Results 5, ECF No. 61 ("Pl. Cmts."); Pl.-Int. Cmts. in Supp. of the Remand Results 3, ECF No. 62 ("Pl.-Int. Cmts."). No party, including Defendant-Intervenor Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("Defendant-Intervenor" or "Petitioner"), filed comments opposing the Remand Results. For the following reasons, the court sustains the Remand Results.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c). The court will uphold Commerce's final scope determination, including redeterminations made on remand, unless the findings are unsupported by substantial record evidence, or are otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Commerce's Remand Results are consistent with the court's prior opinion and order in Shake and Shingle Alliance I. Commerce reversed its conclusion in the Remand Results and explained its reconsideration of the same record evidence, in light of reviewing the parties' comments and binding precedent from the U.S. Court of Appeals for the Federal Circuit in ArcelorMittal Stainless Belgium N.V. v. United States, 694 F. 3d 82, 88–89 (Fed. Cir. 2012) ("ArcelorMittal"). Remand Results at 4. Commerce found that the final "scope language from Lumber IV and the Orders is unquestionably similar and, in the portions relevant to the scope issue at hand, virtually identical." Id. at 8; Notice of Amended Final Determination of Sales at

<u>Less Than Fair Value and Antidumping Duty Order: Certain Softwood Lumber Products from Canada</u>, 67 Fed. Reg. 36,068 (Dep't Commerce May 22, 2002); <u>Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order: Certain Softwood Lumber Products From Canada</u>, 67 Fed. Reg. 36,070 (Dep't Commerce May 22, 2002) (together, "<u>Lumber IV</u>"). Commerce interpreted the scope language in <u>Lumber IV</u> to exclude CSS because the applicable tariff heading, 4418.50.00, Harmonized Tariff Schedule of the United States, covered "articles of shingles and shakes," which were "not covered by the scope of these investigations." <u>Remand Results</u> at 8–9. When comparing the current scope language at issue here against Commerce's prior determination in <u>Lumber IV</u> treating CSS as outside the scope, Commerce concluded that its prior determination "weighs heavily in favor of a determination in this proceeding that CSS is not subject to the Orders." <u>Id.</u> at 9.

Commerce found that specific language and an exhibit included in the petition—a (k)(1) source of information—showed that Defendant-Intervenor lacked an intent to include CSS as subject to the scope of the Orders. See <u>id.</u> at 9–10 (analyzing language in the petition that "the remainder [of certain timber] is used in veneer, oriented strand board ('OSB'), pulp, shake and shingle, and other mills that generally produce merchandise not subject to this Petition[]")[2] and

---

[2] Commerce cited the following language in the petition as support that Defendant-Intervenor described CSS as non-subject merchandise:

> Overall, of the timber harvested in BC from all sources (Crown and private), sawmills use 70.6 percent (41.3 percent on the Coast and 82.2 percent in the Interior), while 10.1 percent is exported (29.7 percent on the Coast and 2.4 percent in the Interior) and *the remainder is used in veneer, oriented strand board ("OSB"), pulp, shake and shingle, and other mills that generally produce merchandise not subject to this Petition.*

9–11 (discussing an exhibit attached to the petition that listed shake and shingle mills as examples of mills in British Columbia that produce allegedly non-subject merchandise).[3] Importantly, Commerce disclaimed its prior reasoning for considering and rejecting Plaintiff and Plaintiff-Intervenor's arguments that the language Defendant-Intervenor used in the petition and attached exhibit supported a finding that CSS fall outside the scope of the Orders. Compare Remand Results at 10–11 with Final Scope Ruling at 18.

Commerce provided a reasonable explanation that binding precedent in ArcelorMittal compelled reviewing "prior interpretations" of "identical scope language" in previous orders when issuing a scope ruling. Remand Results at 4, 8–9. Commerce also relied upon record evidence in explaining why the language and supporting exhibit Defendant-Intervenor included with the petition "persuade[d] Commerce to conclude that, at the time the Petition was filed, [Petitioner] did not consider shakes and shingles to be subject to the investigations and Orders." Id. at 10. The court concludes that the Remand Results are supported by substantial evidence and in accordance with the law because Commerce's (k)(1) analysis, citations to record evidence, and explanation supports a finding that the scope of the Orders excludes CSS. See Final Scope Ruling at 12 ("[W]e have determined that the factors in 19 CFR 351.225(k)(1) are dispositive as to whether CSS are subject merchandise."); Sango Int'l L.P. v. United States, 484 F.3d 1371, 1379 (Fed. Cir. 2007) (To be dispositive, the (k)(1) sources Commerce examined

---

Remand Results at 9 (citing Petition, Vol. III at 10)

[3] Id. (citing Petition, Vol. III at 10).

"must be 'controlling' of the scope inquiry in the sense that they definitively answer the scope question.").

Although the parties challenged Commerce's findings at the administrative level, no party filed comments challenging the Remand Results before the court. See generally Def. Cmts. at 2; Pl. Cmts. at 5; Pl.-Int. Cmts. at 2. Because the court concludes that the Remand Results comply with the court's remand order, the court sustains the Remand Results.

## CONCLUSION

The court sustains the Remand Results.

Judgment will be entered accordingly.

                                        /s/ Jennifer Choe-Groves
                                       Jennifer Choe-Groves, Judge

Dated:   April 20, 2020
         New York, New York